Nicholson, C. J.,
delivered the opinion of the court.
This is a hill filed by Saint against the heirs of Jos. 'W. Matthews, deceased, to rescind a contract entered into on the 3d of May, 1860, between Saint and Matthews, by which Saint conveyed to Matthews a house and lot in Memphis, and, in consideration thereof, and for other considerations, Matthews conveyed to Saint a large body of wild, uncultivated land, situated in Sunflower County, Mississippi.
The deed from Matthews to Saint contained a warranty of- seizin, and against encumbrances, and also the general warranty of title.
The allegations of the bill are, that Matthews had no legal title to the land conveyed, and that he has since died, leaving his estate in Mississippi and Tennessee insolvent.
It is charged that Matthews represented that his title was perfect, and by this representation prevailed on Saint to make no investigation of the title. It is further alleged that the complainant was ignorant of Matthews’s want of title until shortly before the filing of the bill, which was in 1868.
It appears that a large portion of the land was sold for taxes in 1866 or 1867, and bought in by the State of Mississippi. Saint declined to redeem the land, because he had then become suspicious of Matthews’s title.
The defendants resist a rescission of the contract. *490 upon the ground that Matthews had a good title, and-that he was guilty of no misrepresentation.
It appears from a transcript of a record of the chancery court from Marshall County, Mississippi, that Matthews, Mull, and Jones, were tenants in common of the lands in controversy, and that, under a decree for partition, these lands were set apart and allotted to Matthews.
The legal effect of this partition, and of the conveyance by Jones to Matthews of the lands • allotted to him, was to vest in Matthews the title in sever-alty to the lands in controversy.
The defendants rely also upon a certified copy from the Tract Book, showing the purchase of these lands from the State of Mississippi, but they exhibit no grant or deed from the State, except to a small tract.
The complainant relies upon a transcript of a portion of a record from the Probate Court of Marshall County, Mississippi, showing that the estate of Matthews was adjudged insolvent under proceedings in-that court.
The Chancellor held that ■ there was no evidence that Matthews had the legal title to the lands; that the only title shown was equitable; that the covenants of seizin and warranty of title were broken; and that the estate of Matthews was insolvent; whereupon he rescinded the contract, set aside the deeds, and restored the parties, as nearly as practicable, to their condition when the deeds were made.
The defendants have appealed.
*491 The record furnishes no evidence of any other title-to the lands in controversy than that based upon the certificate of.purchase given by the Secretary of State-of Mississippi.
We understand these to be part of the lands granted to the State of Mississippi by Congress for levee purposes. The -legal title, thereby, was vested in the State of Mississippi; and, for anything that appears in the record, continues there.
It follows, that Matthews had only an equitable title.
The complainant was not required by his contract to receive any but a legal title.
It further appears, from a transcript of a record from Mississippi, that the estate of Matthews is insolvent in that State; and it appears from the agreement of the parties that the personal estate in Tennessee is exhausted.
The transcript from Mississippi seems not to be authenticated as a complete record, but the decree adjudging the' estate to be insolvent is properly authenticated, and that is sufficient. Grignon’s Lessee v. Astor, 2 Howard (U. S.), 340.
It is clear, therefore, that. the complainant is entitled to a rescission of the contract, and to be placed as nearly in statu quo as practicable.
The loss arising from the sale of part of the land for taxes must fall on the vendor, as he had no legal title. 3 Lead. Cases in Eq., 65.
Such is the decree of the Chancellor, and we affirm it with costs.
*492 The case will be remanded, that the decree may be executed.
A writ of possession will issue from this court.
A rehearing having been granted, NicholsoN, C. J., on a subsequent day, delivered the following opinion;
The bill alleges, upon information and belief, that the lands were all originally purchased from the Government by Matthews and Mull jointly, by entries in their joint names, in the proper land office in Mississippi, whereby they became joint and equal owners, ■and that neither Matthews in his lifetime, nor his heirs since his death, ever acquired title in any other manner to any portion of said lands; and that the complainant, by his purchase, acquired only an undivided interest in the lands, or any portion of them.
The defendants answer that the lands were originally purchased from the United States by Matthews and Mull, and that at one time they held them as tenants in common. That the lands were divided, and that Matthews held his portion in severalty when he conveyed them to the complainant, and that he had a good right to convey.
The proof is, that Matthews and Mull purchased by entry in the Mississippi land office, and that the lands were afterward partitioned.
This proof shows the legal title in the State of Mississippi.
Why no deed or grant has issued, or, if one have issued, why it has not been produced, is not shown.
*493 It is assumed that the allegation of the complainant, that Matthews and Mull purchased the .land by-entry in the proper land office, is an admission of legal title. The allegation, on the contrary, shows-how they acquired title, and that it was only an equitable title.
The defendants answer that the lands were purchased from the United States, and they claim that their ancestor had the right to convey; but the only right which they show is an equitable right, by Virtue of the title acquired by entry or purchase.
The covenant of their ancestor bound him to make a legal title. This it is not claimed he had the power to do, nor is any legal title set up in his behalf in the answer.
The bill alleges that the only title of Matthews was by purchase by entry, but does not call upon the defendants to produce and deraign his title.
The defendants answer, admitting that he purchased as charged, and claiming that he had a good right to convey.
The bill and answer agree in stating only an equitable title in Matthews.
We think that the Chancellor was correct in holding that this was not the kind of title Matthews covenanted to make, and therefore that the deed was properly set aside and the contract rescinded.